O, JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CLAIRE CAMPOLO,

          Plaintiff,

   v.

DAVID DUEL, et al.,

          Defendants.

Case No.: 2:21-cv-09663-MEMF(MAAx)

**ORDER GRANTING MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND [ECF NOS. 75, 76, 77, 78, 79]**

    Before the Court are five Motions to Dismiss filed by Defendants David Duel, Rebecca Duel, Ilana Yamtoobian, Urban Blox, LLC, S Bonita One, LLC, Iy Ek Partners, LLC, 27 Ozone, LLC, Urban Developer, LLC, Thornton Property One, LLC, and Nourafshan Venice Properties, LLC, David Nourafshan, and Rif-Investments-2, LLC (ECF No. 75); Joseph Miskabi and Law Offices of Joseph Miskabi (ECF No. 76); Kimberly Roberts Stepp, doing business as Stepp Commercial, and R&LS Investments, Inc. (ECF No. 77); Terry Polesie and Surf Realty Corporation (ECF No. 78); and Central Realty Advisors, Inc. (ECF No. 79). For the reasons stated herein, the Court hereby GRANTS the Motion to Dismiss with respect to the Racketeer Influenced and Corrupt Organizations

Act claims WITHOUT LEAVE TO AMEND. The Court further DECLINES to exercise supplemental jurisdiction over the remaining state law claims and hereby DISMISSES the claims.

I. **Background**

    a. Factual Background[1]

Plaintiff Claire Campolo ("Campolo") alleges that Defendants David Duel, Rebecca Duel, Ilana Yamtoobian, Terry Polesie, Kathy Cook, Raffi Shirinian, David Nourafshan, Urban Blox LLC, Urban Blox Criminal Enterprise, Surf Realty Corporation, R&LS Investments, Inc., Kimberly Roberts Stepp, Stepp Commercial, Thornton Property One LLC, RIF Investments-2 LLC, Central Realty Advisors, Inc., Urban Developer LLC, S Bonita One LLC, 351 SB Two LLC, Iy Ek Partners, LLC, 27 Ozone, LLC, Nourafshan Venice Properties, LLC, Forward Management Long Beach, Inc., Joseph Miskabi, Law Offices of Joseph Miskabi, Richard Daggenhurst, Feldman, Daggenhurst & El Dabe, and Daggenhurts Law PC (collectively, the "Urban Blox Defendants") have perpetrated a fraudulent scheme to defraud rent-controlled tenants in order to obtain recovery of rental properties, raise the rents to market rates, and unjustly enrich themselves. SAC ¶ 1. The Urban Blox Defendants acquired several properties that are subject to the Los Angeles Rent Stabilization Ordinance, which was enacted in response to critical shortages in safe and sanitary affordable rental housing. *Id.* The Urban Blox Defendants targeted disabled, low-income, elderly, and long-term rent-controlled tenants, resulting in the loss of possession of their rent-controlled properties by several rent-controlled tenants. *Id.*

In or around December 2017, Campolo signed a residential lease agreement with Defendant Surf Realty Corporation and moved into 49 Thornton Avenue, Unit 3. *Id.* ¶ 84. The property was owned by Surf Realty Corporation, and Campolo's unit was rent-controlled. *Id.* ¶¶ 84, 88. In or around January 2019, Campolo's unit sustained significant water damage due to plumbing leaks and water intrusion issues, causing the growth of mold. *Id.* ¶ 87. Campolo contacted Defendant Terry Polesie ("Polesie") to request that she be provided temporary accommodations for her disability. *Id.* However, Campolo was not provided any accommodations. *Id.* ¶ 88.

---

[1] The below factual allegations are taken from Plaintiff Claire Campolo's Second Amended Complaint. ECF No. 74 ("SAC" or "Second Amended Complaint").

In or around May 2019, Campolo received several telephone calls from Polesie notifying her that her unit at 49 Thornton was being sold and that Campolo was required to vacate her rent-controlled unit immediately. *Id.* ¶ 89. Thereafter, Campolo was subjected to unannounced entries into her unit unrelated to repairs or services, as well as incomplete postings of notices to enter her unit. *Id.* ¶ 90. After refusing to voluntarily vacate her unit, Campolo began experiencing harassment and receiving threats from representatives of the new owners of the property, including Defendants Ilana Yamtoobian ("Yamtoobian") and David Duel ("Duel"), via telephone and mail. *Id.* ¶ 91. According to Campolo, Yamtoobian and Duel informed her that she was required by law to vacate her unit and demanded that she do so immediately. *Id.* Yamtoobian also presented herself as an "independent mediator" attempting to help Campolo negotiate a buyout. *Id.* ¶ 92.

The Urban Blox Defendants are "the owners, lessors, managers, and/or controllers of, and/or in the business of owning, renting, controlling, possessing, leasing, managing, and/or maintaining the Property and/or the Premises that are the subjects of this lawsuit." *Id.* ¶ 30.

On June 4, 2019, Campolo involuntarily relinquished possession of her unit due to the "persistent harassment and intense pressure applied" by the Urban Blox Defendants, their refusal to make repairs to her unit, and their representation that Campolo was required to vacate her unit. *Id.* ¶ 93. Campolo relied on the Urban Blox Defendants' fraudulent acts and statements by hiring attorneys, allowing the Urban Blox Defendants to access her Unit, and involuntarily surrendering possession of her rent-controlled unit. *Id.* ¶ 94.

### b. Procedural History

On December 14, 2021, Campolo filed the instant action against the Urban Blox Defendants. ECF No. 1. On March 7, 2022, Campolo filed a First Amended Complaint. *See generally* ECF No. 28.

In response, several of the Urban Blox Defendants filed Motions to Dismiss the FAC, seeking dismissal of Campolo's FAC arguing that: 1) she has no standing to bring a RICO claim; (2) she failed to properly state a claim for RICO; (3) her RICO claims are barred by the Noerr-Pennington Doctrine; and (4) the court should decline to exercise supplemental jurisdiction over her remaining state law claim. ECF Nos. 33, 38, 48, 52, 58. The Court held oral argument on these

motions on June 16, 2022. Following the hearing on these motions, the Court issued a minute order granting Campolo's requested leave to amend the complaint. ECF No. 73.

On July 15, 2022, Campolo filed a Second Amended Complaint, alleging twenty-two causes of action. She alleges two federal causes of action: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); and (2) violation of RICO, 18 U.S.C. § 1962(d). *See generally* SAC. In addition, she alleges nineteen causes of action arising under state law: (3) fraud/intentional misrepresentation; (4) fraudulent concealment; (5) unlawful eviction; (6) negligence; (7) nuisance; (8) breach of covenant of quiet enjoyment; (9) breach of implied warranty of habitability; (10) housing discrimination in violation of the Fair Employment & Housing Act, CAL. GOV'T CODE § 12955; (11) violation of CAL. CIV. CODE § 1940.2; (12) violation of CAL. CIV. CODE § 1942.5; (13) violation of CAL. CIV. CODE § 1954; (14) violation of CAL. CIV. CODE § 52.1; (15) violation of CAL. CIV. PROC. CODE § 1159; (16) violation of the Unruh Civil Rights Act, CAL. CIV. CODE § 51; (17) unlawful business practices, CAL. BUS. & PROF. CODE § 17200; (18) conversion; (19) intentional infliction of emotional distress; (20) bad faith retention of security deposit; (21) violation of Los Angeles Municipal Code, Article 5.3; (22) violation of Los Angeles County Code § 8.52.130. *See generally id.* Campolo has dismissed all claims against Forward Management Long Beach, Inc. and the Daggenhurst Defendants. *See* ECF Nos. 47, 56.

The instant Motions to Dismiss were filed on July 29, 2022, by Defendants Kimberly Roberts Stepp, doing business as Stepp Commercial, and R&LS Investments, Inc. (the "Stepp Defendants"); David Duel, Rebecca Duel, Ilana Yamtoobian, Raffi Shirinian, Urban Blox, LLC, S Bonita One, LLC, Iy Ek Partners, LLC, 27 Ozone, LLC, Urban Developer, LLC, Thornton Property One, LLC, Nourafshan Venice Properties, LLC, David Nourafshan, and Rif-Investments-2, LLC (the "Duel Defendants"); Joseph Miskabi and Law Offices of Joseph Miskabi (the "Miskabi Defendants"); Terry Polesie and Surf Realty Corporation ("Polesie Defendants"); and Central Realty Advisors, Inc. (collectively, the "Moving Defendants").[2]

---

[2] The Court notes that many of the arguments set forth in the various Motions to Dismiss are similar, if not duplicative. For the sake of judicial economy and to avoid unnecessary costs to the parties, the parties—and particularly the Urban Blox Defendants—are advised to consider submitting joint filings in the future.

The Moving Defendants filed the following Motions to Dismiss:

- Duel Defendants: ECF No. 75 ("Duel Motion" or "Duel Mot.");
- Miskabi Defendants: ECF No. 76 ("Miskabi Motion" or "Miskabi Mot.")
- Stepp Defendants: ECF No. 77 ("Stepp Motion" or "Stepp Mot.")'
- Polesie Defendants: ECF No. 78 ("Polesie Motion" or "Polesie Mot.")
- Central Realty Advisors, Inc.: ECF No. 79 ("Central Realty Motion" or "Central Realty Mot.").

The Motion was fully briefed on August 18, 2022. *See* ECF Nos. 88 ("Opp'n"), 89 ("Stepp Reply"), 90 ("Miskabi Reply"), 91 ("Duel Reply"), 92 ("Central Realty Reply").[3] The Court held oral argument on this matter on September 1, 2022.

## II. Legal Standard

### a. Motion to Dismiss

Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The purpose of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court may properly dismiss a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard generally only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

---

[3] The Court notes that the Polesie Defendants did not file a reply.

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "threadbare recitals of the elements of a cause of action." *Id.* "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A district court should generally grant leave to amend freely. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). However, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Id.* at 1041.

### b. FED. R. CIV. P. 9(b)'s Heightened Pleading Standard

Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Specifically, the "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). Additionally, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id.* at 1103.

With respect to RICO claims specifically, the Ninth Circuit has generally applied Rule 9(b) to require "a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991), *cert. denied*, 502 U.S. 1094 (1992). All RICO claims involving fraud must be alleged with particularity under FED. R. CIV. P. 9(b). *Id.* ("The Ninth Circuit has repeatedly insisted that [FED. R. CIV. P. 9(b)'s heightened pleading requirement] be followed in RICO actions alleging the predicate act of mail fraud."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (applying FED. R. CIV. P. 9(b)'s heightened pleading requirement to allegations of mail and wire fraud). However, the non-fraud aspects of a RICO claim are not subject to Rule 9(b). Gregory P. Joseph, *Civil RICO: A Definitive Guide* 265, 267 (5th ed. 2018) ("Rule 9(b) applies to the allegations of a RICO complaint only to the extent that they sound in fraud.").

Moreover, Rule 9(b) requires that the facts constituting the fraud be pled with specificity—conclusory allegations are insufficient. FED. R. CIV. P. 9(b); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient.").

### c. Exercise of Supplemental Jurisdiction

28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and *at every stage of the litigation*, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (emphasis added) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). A district court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, district courts have the discretion to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

### III. Discussion

Collectively, the Moving Defendants seek dismissal of Campolo's complaint because: (1) she has failed to meet the pleading standards under Rules 8(a) and 9(b); (2) she failed to properly state a claim for RICO; (3) her RICO claims are barred by the Noerr-Pennington Doctrine; and (4) the court should decline to exercise supplemental jurisdiction over her remaining state law claims. Stepp Mot. at 1–2; Duel Mot. at 1; Miskabi Mot. at 1; Polesie Mot. at 4–5; Central Realty Mot. at 2–3.

#### a. Campolo failed to meet the pleading standards under Rules 8(a) and 9(b).

The Moving Defendants contend that Campolo has failed to meet the pleading standards under Rules 8(a) and 9(b). The Duel Defendants assert that the SAC "simply lumps all Defendants together for the most part and fails to account for every named defendant." Duel Mot. at 11–12. The Stepp Defendants assert that "Beyond the allegations that the Stepp Defendants are a part of the Urban Blox criminal scheme and are situated in Los Angeles County, and purportedly purchased the property at some point, there are no allegations whatsoever as to the alleged conduct of the Stepp Defendants that would entitle Plaintiff to relief against them." Stepp Mot. at 8. The Polesie, Central Realty, and Miskabi Defendants allege similar deficiencies. *See* Polesie Mot. at 12 ("Plaintiff's SAC does not even allege that Moving Defendants specifically committed the required predicated acts, mail fraud or wire fraud. Instead, Plaintiff lumps all Defendants together, despite there being over twenty separate Defendants."); Central Realty Mot. at 5–6 ("The complaint fails to comply with Rule 9(b) and must be dismissed. The Plaintiff fails to differentiate the allegations for each of the twenty-eight Defendants. Furthermore, the Complaint lacks any factual statements about the role of Defendant CRA in the alleged fraudulent scheme as necessitated by the heightened pleading standard."); Miskabi Mot. at 15–16 ("Plaintiff does not even allege the Miskabi Defendants committed any predicate act. Rather, she lumps the Miskabi Defendants into the fabricated category

1  'Defendants' without pleading the time, place, and manner of their involvement in the alleged
2  scheme, as opposed to each of the other defendants, or otherwise meet this Rule 9(b) standard.").

3      As discussed above, Rule 8(a) requires "a short and plain statement of the claim showing that
4  the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to "give the defendant fair notice of
5  what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Rule 9(b)
6  requires that a plaintiff plead the "who, what, when, where, and how" of the fraudulent activity.
7  *Vess*, 317 F.3d at 1106. With respect to RICO claims, a plaintiff must also "detail with
8  particularity . . . the role of each defendant in each scheme." *Lancaster Cmty. Hosp.*, 940 F.2d at
9  405.

10     Indeed, the Court finds that Campolo's allegations fail to meet the 8(a) and 9(b) pleading
11 standards described above. Campolo's SAC alleges a few instances of specific conduct by
12 Yamtoobian, Polesie, and Duel which, on their own, would likely be sufficiently detailed enough to
13 survive under Rules 8(a) and 9(b). *See, e.g.*, SAC ¶¶ 87–89, 91–94. However, that is the extent to
14 which Campolo pleads with particularity. Rather, Campolo's SAC—like her FAC—appears to lump
15 all of the Moving Defendants together, referring to them interchangeably as either the "Urban Blox
16 criminal enterprise" or simply "Defendants."[4] In other words, the SAC fails to "detail with
17 particularity . . . the role of *each* defendant in each scheme," as required of RICO claims. *Lancaster
18 Cmty. Hosp.*, 940 F.2d at 405 (emphasis added).

19     Campolo's first cause of action states: "The Urban Blox criminal enterprise is an association-
20 in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of Defendants, including their
21 employees and agents." *Id.* ¶ 188. The SAC provides no additional details regarding how each of the

---

[4] With respect to the Miskabi Defendants, the only allegation against them asserts that they sent a draft demand letter with an attached draft complaint to another tenant in her building. SAC ¶ 114. However, Campolo does not identify or offer any additional allegations suggesting, at minimum, that such conduct constitutes fraudulent activity, or that the Miskabi Defendants engaged in any wrongful conduct toward her. A comparison between Campolo's FAC and SAC reveals that, rather than plead any addition allegations with respect to the Miskabi Defendants, Campolo actually removed allegations against the Miskabi Defendants. *See generally id.* (Causes of Action 3, 4, 16–19). With respect to Surf Realty, the SAC contains no specific allegations except the statement that Surf Realty owned 49 Thornton and sold 49 Thornton to "a group of predatory investors." *Id.* ¶¶ 84, 86. Campolo neither identifies nor offers additional allegations suggesting that such conduct constitutes fraudulent activity. With respect to the Stepp Defendants, the only allegations against them relates to their interactions with two other tenants, not with Campolo. *Id.* ¶¶ 57, 70.

Urban Blox Defendants played a role in the alleged criminal enterprise, aside from the specific allegations noted previously. The SAC further alleges that the Urban Blox Defendants engaged in a variety of conduct, including corresponding with Campolo, mailing Notices of Entry, corresponding through fraudulent personal identities, refusing to accept rent, mailing Notices to Quit or Notices to Pay Rent or Quit, and corresponding with Campolo to offer "buy-outs." *Id.* ¶ 192. With respect to Campolo's mail and wire fraud allegations, the SAC similarly lumps the Urban Blox defendants together by stating, "The Urban Blox criminal enterprise utilized interstate mail and wires for the purpose of obtaining money or property by extinguishing Plaintiff's and similarly situated tenants' possessory rights in the Property by means of omissions, false pretenses and misrepresentations described herein." *Id.* ¶ 193. The SAC again fails to provide any further detail, at minimum, as to which Urban Blox Defendants contributed to the fraud, or in what way. Although some Urban Blox Defendants are specifically named throughout the SAC, one cannot discern which specific Urban Blox Defendants Campolo intends to refer to in a majority of her allegations. As a result, none of the Urban Blox Defendants have sufficient notice of their alleged misconduct.

The Court therefore finds that Campolo's SAC fails to meet FED. R. CIV. P. 8(a)'s standard and 9(b)'s heightened particularity requirement.[5]

### b. The Court declines to exercise supplemental jurisdiction over Campolo's remaining state claims.

As previously discussed, the SAC alleges two claims under RICO. In addition to Campolo's two RICO claims, the SAC asserts twenty state law claims for relief over which the Court possesses only supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). A district court has discretion to decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). A district court may decline to exercise supplemental jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing

---

[5] Because the Court concludes that Campolo failed to meet the standards required by FED. R. CIV. P. 8(a) and 9(b), the Court need not consider the Moving Defendants' additional arguments, such as that Campolo failed to state a claim for RICO or that Campolo's RICO claims are barred by the Noerr-Pennington doctrine.

state law, and the relationship between the state and federal claims." *City of Chicago*, 522 U.S. at 173. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon*, 484 U.S. at 357). The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under 28 U.S.C. §§ 1367(c)(1)–(3)." *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).

Here, the Court has found that Campolo has failed to properly allege her RICO claims and ordered dismissal of both. The RICO claims were the only two claims over which the Court possessed original jurisdiction. Moreover, the Court finds that it would be imprudent and contrary to the interests of judicial economy to maintain jurisdiction over the remaining state law claims without any claims over which it has original jurisdiction. The Court therefore DISMISSES the remaining state claims without prejudice.[6]

### c. The Court declines to grant Campolo leave to amend.

Finally, the Moving Defendants contend that Campolo should not be granted leave to amend because she has already amended her complaint twice, after which she has allegedly still failed to state a viable claim. Duel Mot. at 17–18; Stepp Mot. at 11–14; Polesie Mot. at 15. Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2); *see also Cervantes*, 656 F.3d at 1041. However, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Id.* at 1041. Moreover, "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quoting *In re*

---

[6] Pursuant to 28 U.S.C. § 1367(d), this Order tolls the statute of limitations on the state claims for a period of 30 days, unless state law provides for a longer tolling period.

*Read-Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003)); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

Campolo has already had two opportunities to amend her complaint—once as a matter of right after receiving motions to dismiss the original complaint, *see generally* FAC, and then again after obtaining leave from the Court to amend following a hearing on the Moving Defendants' Motions to Dismiss the First Amended Complaint, *see generally* ECF No. 73, SAC, at which many of the defects outlined here were discussed. Despite these multiple opportunities to allege additional well-pleaded facts, Campolo's SAC was only slightly different from her FAC, and none of the amendments cured the deficiencies that existed in her prior complaints. Because she has failed to add additional well-pleaded facts to meet the pleading standards under Rules 8(a) and 9(b) and state plausible RICO claims, this Court must conclude that she has no such facts and further leave to amend would be futile. The Court therefore dismisses the SAC's RICO claims WITHOUT LEAVE TO AMEND.

### IV.     Conclusion

In light of the foregoing, the Court hereby ORDERS as follows:

1. The Motion to Dismiss with respect to Campolo's RICO claims is GRANTED WITHOUT LEAVE TO AMEND;
2. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. Therefore, the state law claims are DISMISSED without prejudice.

IT IS SO ORDERED.

Dated: January 11, 2023

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge